Good morning, Your Honors, and may it please the Court, Cameron Johnson from the Federal Public Defender on behalf of Mr. James Blackman. If Your Honors are okay with it, I would like to preserve two minutes on rebuttal. Thank you, Liz. We'll end your talk. Mr. Blackman is entitled to equitable tolling based on the severe physical and mental impairments that he endured during the limitation period. His severe impairments included things like extreme delusional thinking, schizophrenia, memory lapses, blindness, and hard hearing, and these all constituted the kinds of extraordinary circumstances beyond his control, making timely filing impossible. Yet despite his circumstances, he exercised reasonable diligence and sought assistance with what he couldn't do alone. So on the reasonable diligence prong, the district court says, well, he filed a state aid petition, and we looked at them, they were cogent. And so, with feasibly available access to assistance, with the assistance he had, the district court reasoned he could have filed the federal aid. Why a petition? So why is that wrong? Your Honor, that's wrong because the bill's test explicitly states that the district court should examine whether the petitioner's mental impairment prevented him from communicating with or sufficiently supervising any assistance that he obtained. And how does that work out if he ate several state aid because petitions that he filed? So he was able to file several state aid because that was what the district court focused on? Yes, Your Honor. He did file several state habeas petitions during the limitation period. However, those were entirely handled by an incarcerated advocate. And that advocate submitted a declaration stating that Mr. Blackman in no way effectively monitored his assistance or communicated with him. And we can see that declaration in October 19, 2019. Mr. France's incarcerated advocate stated that he had to do his best to sift through Mr. Blackman's ramblings. It was difficult to keep his train of thought in a nonsensical fashion. And he gleaned most of the facts from reviewing the transcripts. And he even expressed that it was his opinion that Mr. Blackman was so mentally ill that it nearly incapacitated him. And so because of that, we can see that on page 48 of the excerpts of record in the report and recommendation, the report states that even if he needed assistance of a fellow inmate, he did have access to such assistance throughout the limitation period. However, merely having that access is not the equivalent of exercising sufficient supervision over the assistance that he was able to obtain. And so while we commend him for obtaining that assistance, which shows that he exercised diligence with what he couldn't do alone, he was unable to sufficiently supervise Mr. Blackman during that period. But for his record, he wouldn't have been able to monitor what his incarcerated advocate was doing on his behalf. So are you suggesting that under Bill's, if somebody meets the first prong of mental impairment, then per se they meet the second prong because they wouldn't have a sufficient mental ability to supervise? Your Honor, the facts in this case do suggest that, in fact, because in spite of his physical impairments, his very severe physical and mental impairments, he did obtain that assistance, which shows that he was diligent because he did what was in his control. He found somebody who would help him even though he wasn't able to actually monitor. So either with reasonable assistance, he was able to file necessary filings, or if you're mentally impaired, you're excused from filing timely filings because you couldn't supervise. So you sort of have to have either one theory or the other. Your Honor, it's our position that Mr. Blackman is entitled to equitable tolling because he does meet both prongs of the Bill's test. He did have sufficiently severe physical and mental impairments that prevented him from filing, and he also exercised the diligence that was required. And just to give Your Honors an example of how severe his mental impairments were, in January of 2019, squarely within the limitation period, Mr. Blackman expressed it was his belief that the FBI was investigating his case on his behalf and that they were going to get back to him. He had voices in his head that were telling him that he shouldn't fight the case, that it would be better to stay in prison where it was safe for him. So what's confusing is, despite all that, he filed these state petitions that are fairly coherent, so whether that's because of him or because of his assistance that he was able to obtain, one way or the other, he filed state petitions that, if he had just filed them in federal court instead, would have met the deadline. So how do we deal with that? It's a little hard to figure out how we can't say he was capable of filing it in federal court instead, given that he filed it in state court. You're exactly right, Your Honor. However, it's our position that all of that cuts in favor of the fact that Mr. Blackman was in no position to actually monitor what his incarcerated advocate was doing. And so, you know, we don't have to speculate whether Mr. Blackman was monitoring or communicating with his advocate. He was not. That was included in the France Declaration and also documented throughout his medical documents. And, you know, this is a reasonable standard, not maximum feasible diligence. And so it was reasonable for him to obtain that support and that assistance, and his inability to actually supervise cuts in favor, according to the Bills v. Clark test, that he was unable to supervise and therefore should receive equitable tolling. He filed his last state habeas petition on May 7, 2020. Other than the visual impairment, is there anything in the record that shows that he suffered additional ailments that he hadn't suffered prior to that date? Your Honor, there's also a hearing impairment that also inhibited his ability to effectively communicate with others and to be able to hear them properly. And that wasn't diagnosed prior to May 7, 2020? The records are a little bit iffy as far as exactly when his hearing impairment was initially identified. Did you want to save some time for rebuttal? Yes, Your Honor. If there are no further questions, I would like to reserve my time for rebuttal. Thank you. We'll hear from the Counsel. Good morning, and may it please the Court. Christopher Sanchez, Deputy Attorney General for Respondent. This Court should affirm the District Court's finding that the petition was untimely by over a year, and that petitioner is not entitled to interval or equitable tolling. Petitioner has not met his burden on appeal of showing that the District Court's finding was clearly erroneous, given that petitioner was able to file four state habeas petitions during the limitation period, both on his own and with the assistance of Counsel. Before I continue to address what was raised by Petitioner's Counsel here today, I did want to address two very quick issues. The first is the issue of the motion to strike appellant's opening brief that was filed by Respondent. At this stage, Respondent's belief is that it would be appropriate to at a minimum strike the declaration that Petitioner's Counsel attached to the end of their opening brief. The fact that they are asking this Court to consider issues outside of the appellant record is highly inappropriate, and we would ask the Court to not give it any credence. The second is the fundamental principle of appellate law, which is that this Court should only address the issues that were certified for appeal. And I did want to clarify here that the second issue, which comes to equitable tolling, the District Court only granted certification for whether equitable tolling should be granted on a basis of mental health issues, not physical impairment. I know that in the briefing, Petitioner's Counsel focuses quite heavily on additional physical impairments such as blindness or hearing loss. However, those issues were not certified for appeal. I was actually wondering about whether they were just essentially asking that we expand the certificate of appealability. It seems like that is the implied request from Petitioner's Counsel. And, of course, Respondent, just to be careful, we briefed those issues as well. However, Respondent would respectfully request that this Court not expand these issues. And that's because, as you hear, the record can sometimes be muddled when it comes to these physical impairment issues. In fact, the District Court specifically noted that Petitioner had not shown that there were any records that showed that he had physical impairments during that limitations period. And, therefore, we would think it would only be appropriate in this case for the Court to only be dealing with the mental health issue. Why is it a problem to expand and consider the other issues? It sounds like you think you win either way. That's correct, Your Honor. We just believe that as a principle of appellate law, it is just appropriate to only focus on what was granted cert on. Now, going then to the equitable tolling issue in this case, which was focused on Petitioner's argument, I'll focus on that due diligence problem, which was mainly discussed here. Can I ask for a second about the statutory tolling? Both sides talked about statutory tolling, but I'm not sure it makes any difference because there's not enough statutory tolling either way for it to get to a year. Am I right about that? That's correct, Your Honor. Yes. So, both parties are in agreement that the petitioner was entitled to some amount of statutory tolling based on his first and second state petitions that were filed. However, that still does not make the petition timely. I thought they were asking that the certificate of appealability was whether a period of 280 days can constitute a reasonable time period for that tolling. Yes, Your Honor. So, the first issue is whether there should be interval tolling or gap tolling for 280 days. In theory, if 280 days of gap tolling were given, I believe that would make the petition timely. I believe Your Honor's question, though, was about statutory tolling. No, this is what I was asking about. So, the 280 days, I thought your position was that he was more than a year late. So, 280 days is less than a year, so I don't understand why the 280 days matters. I apologize, Your Honor. I was confused about the questions here. No, I don't believe that the 280 days would make much of a difference. If my math is correct, I don't think it would make much of a difference. However, as we see with both parties, the gap tolling issue really has been just a subsidiary issue here, and it seems like the gap tolling has almost been subsumed under the equitable tolling issue. And when it comes to the equitable tolling, as Your Honor correctly mentioned, here it is very hard to get around the idea that a petitioner is entitled to equitable tolling given the fact that four state petitions were filed. Well, I think the argument goes, if I'm understanding correctly, that if Mr. Blackman had not been impaired, he could have supervised his jailhouse assistant and directed him to file a federal hate speech petition. But because of the mental impairment, he was not able to do that. Correct. And I'd like to address that head on. The first is that I think the record needs to show that it is most likely, more likely than not, that the petitioner handled the first two state habeas petitions by himself. The reason why it looks that way is because when you look at the signature blocks of the four state habeas petitions that were filed in this case, the first two state habeas petitions only have Mr. Blackman's signature on them. The third state habeas petition is the first one where you see the cruel friends declaration included. Is this an argument you made in your brief? I don't remember the signature argument. We did not emphasize the signatures, Your Honor. Did you talk about it at all? We did mention that Mr. Blackman both filed petitions on his own and with assistance, I believe. However, even if that were not to be considered, I would say to address the idea of assistance, this idea that Mr. Blackman was not able to assist or supervise enough is being relied on a case from the First Circuit called Rivovifigo. And in that case, what had happened was a petitioner's father had reached out to private counsel, had asked that counsel, can you please file a petition on behalf of my son? And then the counsel did that without ever discussing the issue with the petitioner. And the petitioner, without any dispute, said, I never authorized this. And therefore, the First Circuit thought that was not enough assistance. The facts in this case are very different. First, we see that petitioner said on February 18th, 2019, I hired the jailhouse lawyer to work for me. And then in a separate declaration filed on March 21st, 2020, he says, I hired Carl Franz to assist me. And then in that declaration, he also says that I was the one that filed Steve Habeas' petitions. In other medical records, Mr. Blackman says, I am nervous about the paperwork that I filed. So time and time again, we are seeing that petitioner was the one that reached out for assistance. This is not like that Rivovifigo case where it was the third party that reached out for assistance. The second point about supervising, though, is I think it's incorrect to say that there was no communication between Mr. Blackman and Mr. Franz. We see, in fact, that in Mr. Franz' declaration, he says, I was able to ask petitioner some questions. He did give me some answers. And that did assist him in putting together the Steve Habeas' petitions. And so it would be incorrect to say that there was absolutely no communication and that Mr. Blackman had zero chance or zero assistance or zero supervision in this case. Can you address your opposing counsel's argument that we should remand for an evidentiary hearing? It seems like there's some nuances or maybe lack of clarity on certain facts. Why shouldn't we remand it for an evidentiary hearing? Sure. For several reasons, Your Honor. The first is that under the Gonzalski-Aguilera case, an evidentiary hearing is not appropriate when petitioner has had multiple opportunities to either present the evidence that they've indicated to in the district court level. And that's what happened here. Petitioners have multiple opportunities to plead and provide records that would establish that equitable tolling is appropriate. And like in Gonzalski-Aguilera, where those opportunities arose, they found that a remand for evidentiary hearing would not be appropriate. And that's the same in this case. The second reason is that we have enough evidence in the record to be able to definitively establish that equitable tolling would not be appropriate in this case. We see that based on the state habeas petitions that were filed. We see that from the medical records, which show that petitioner was only housed in the enhanced outpatient program throughout the limitations period. And we have that from the medical records, which specifically show that any type of mental illness a petitioner was suffering during the limitations period was not so severe that would rise to the level of meeting the first prong of the Bill's test. So basically... It seems like you've come in today making a new argument that I really don't see in your brief, that we should be able to tell that he actually filed his state petitions himself and that that shows something more about his competence. I mean, maybe we do need a hearing to figure out if that's true. I apologize, Your Honor. If it seems like this is a new argument, then I will kindly withdraw that argument. I think that argument doesn't necessarily need to be considered in order to find that the district court was not clearly erroneous when it found that equitable tolling was appropriate. But not appropriate. Excuse me. Can I just add to that? I mean, I thought the status of a jailhouse lawyer is that he's just a clerk or whatever. It has no legal significance that he was helped by a jailhouse lawyer. He's not an actual attorney. Isn't that right? I'm sorry, Your Honor. Could you rephrase that? I don't think that relying on a jailhouse, another inmate, in other words, has any legal significance because that person's not a lawyer and couldn't file on behalf of his client. That's correct, Your Honor. I think I would agree with that. Whether the jailhouse lawyer is actually a lawyer or not is not that significant. What is significant is the fact that the petitioner was able to obtain assistance, and we see that with the Stancil case. There, in the Ninth Circuit in that case, found that because the petitioner had reasonable assistance throughout the limitations period, that was an important factor that cut against the granting of equitable tolling. So you're arguing both that he did this without assistance and that he had assistance? I will respectfully withdraw the argument that he did it without assistance or with assistance. Even if he filed all four state habeas petitions with the assistance of a jailhouse lawyer, we still believe that equitable tolling is not appropriate in this case. And the district court correctly found that because of that, he should not be entitled to equitable tolling. And that's based, if all four state habeas petitions were filed with assistance of a jailhouse lawyer, then this case would fall squarely under the Stancil case, and therefore equitable tolling should not be granted. Thank you, Your Honor. I apologize. Thank you. Your Honors, I'd like to briefly paint a picture of Mr. Blackman during the limitation period. He was housed in the Enhanced Outpatient Program, one level below a mental health crisis bed. Mr. Blackman was someone who cannot even read his legal documents by himself. He was additionally severely hearing impaired. Mr. Blackman believed that he was telepathic. Can I ask, what difference do you think an evidentiary hearing would make here? Your Honor, an evidentiary hearing would provide an opportunity for the district court to bear out the record and identify the facts that it itself and the magistrate judge identified were missing from the record. It seems like the district court thought that the fact that these state petitions were pretty adequate and were filed during the limitations period was all that we need to know to show that he could have filed a federal one. How would an evidentiary hearing undermine that? Well, to be clear, our position is that the magistrate judge erred in that determination because it's not merely access, but it is effectively communicating and monitoring the assistance that's obtained. So that was clear error on the district court's part. However, the hearing would provide an opportunity to examine the missing information that the magistrate judge identified in its report and recommendation, and that's specifically the impact of his mental health issues. That's the symptoms that he suffered from. And I'm close to the first prong of bills, like the degree of mental impairment. And I think Judge Friedland and I are both worrying more about, well, what you can do with reasonable assistance, the second prong. And we know he filed the state hate appeals. So what would the EI evidence show about this second prong? About his diligence? His diligence, yeah. Well, an evidentiary hearing would provide an opportunity for Carl Franz to be brought in and questioned about exactly what Mr. Blackman was able to help him with or not able to help him with and, you know, the exact scope of that assistance. Okay. I think we have your argument up here over time. Thank you. Thank you, Your Honors. Okay, the case of Blackman v. Esmeralda is submitted.
judges: IKUTA, FRIEDLAND, LEE